53 So.2d 586

**WOODWARD IRON CO. v. CRAIG.**

**6 Div. 119.**

Supreme Court of Alabama.

March 15, 1951.

As Modified on Denial of Rehearing June 28, 1951.

Dryer & Dryer, of Birmingham, for appellant.

Lipscomb & Brobston and Jas. M. Hamrick, all of Bessemer, and D. G. Ewing, of Birmingham, for appellee. Hare & Parsons, Harsh & Glasser, Drennen & Drennen, Beddow & Jones, Cooper, Mitch & Black, Chester Austin, Hal W. Howard, and Clifford Emond, all of Birmingham, filed brief on behalf of appellee.

Cabaniss & Johnston, Burr, McKamy, Moore & Tate and White, Bradley, Arant & All, all of Birmingham, amici curiae.

FOSTER, Justice.

This is a suit under the homicide statute. Section 123, Title 7, Code. Decedent had been an employee of defendant for practically all of his mature years, working in an iron ore mine. While so engaged, he contracted silicosis of the lungs, which first appeared about 1943. He died February 21, 1949 of tuberculosis, which resulted from silicosis. His disease was not caused suddenly, violently, nor by accidental means. In 1943 he was transferred to a job outside of the mine which he filled until October 3, 1944, after which date until July 19, 1945, he was on sick leave. He then requested his release and was dropped from the. employment roll. His work was in development headings, which are started off from the main air course and are dead end tunnels until they can be connected with an air course. They are said to be always dusty, very much so at times, and that no sprinkler system was used; that vent tubes convey water and air to the face of the headings, but such vent tubes were sometimes damaged and not kept close to the face of the headings. A small hose was the only means of wetting the ore which had been shot down.

■■■ The negligence alleged in the complaint was the failure to exercise due care to provide a reasonably safe place in which to work. This is a common law duty. When death results, such failure to provide a reasonably safe place to work brings the claim under section 123, Title 7, Code. That statute gives a cause of action to be prosecuted in the name of the personal representative of one whose death is caused by the wrongful act, omission or negligence of defendant. The recovery is for distribution among the distributees of the estate of decedent according to the statute of distribution. The statute also provides that action must be brought within two years from and after the death of the intestate. The cause of action there provided for must be one which gives rise to an action which the intestate could have maintained if it had not caused death.

The first question presented on this appeal arose from rulings on demurrer to certain pleas. The pleas first considered in this connection are 10 and 11. Those pleas show that intestate, while he was still alive on February 14, 1946, filed a suit in the Circuit Court of Jefferson County against the defendant. Said suit was removed to the United States District Court, which court had jurisdiction of the parties and subject matter of the suit and, on September 23, 1946, a judgment was rendered in said district court in favor of the defendant and against the plaintiff's intestate upon the merits of said cause, dismissing the suit. Wherefore plea 10 alleges that plaintiff herein is estopped by virtue of said judgment. A copy of the record of that cause is attached. The plea further alleges that plaintiff's intestate was not employed by defendant and was not in any way exposed to the dust or other obnoxious substances in or about the mines of the defendant long prior to said judgment, to wit, the month of October 1944: the date of his death being February 21, 1949. That said suit was based upon the same subject matter as that embraced in the instant case. Plea 11 presented the same legal question.

Defendant filed other pleas to which demurrer was sustained, and which appellant urgently insists were not subject to demurrer.

■■ .Pleas 6 and 7 are the statute of limitations in Code form. One pleads the one year statute, and the other pleads the two year statute. As a matter of fact, we may pause to say there is no statute of limitations applicable to the cause in question under section 123, supra, notwithstanding section 123 fixes two years as the period in which the suit must be brought and makes it a condition to the maintenance of the action. Louisville & Nashville R. Co. v. Chamblee, 171 Ala. 188, 54 So. 681. It is not subject to the rules applicable to the statute of limitations, notwithstanding section 25, Title 7, Code. The complaint shows upon its face whether the suit was brought within the two years because the complaint shows when plaintiff's intestate died and also when the suit was brought, so that such a plea is inappropriate. But the complaint would be subject to demurrer if it did not show that it was brought within two years. The general issue to such a complaint puts in issue any controversy in respect to it. The only controversy which could arise in that connection would be as to the date of the death of intestate. As the statute of limitations of one year has no application, we need give no further consideration to the pleas numbered 6 and 7.

Appellant contends that a very important legal question is presented by plea 9, to which demurrer was sustained. It is in substance that plaintiff's intestate was not exposed to dust or other obnoxious substance in or about the mine of defendant for a period of more than one year prior to the death of decedent. The theory of that plea is that section 123, supra, gives a cause of action in favor of the personal representative of a deceased when such deceased could have maintained an action on account of the same acts of defendant causing personal injuries, rather than death; and that at the time of the death of plaintiff's intestate any claim which may have been available to him for damages on account of such wrongful act of defendant was barred by the statute of limitations of one year and, therefore, he could not have main-

tained at that time an action for such wrongful act, omission or negligence on the part of the defendant.

The pleas of res judicata or estoppel by judgment and plea 9, supra, are closely connected with each other and both grew out of that feature of section 123, supra, which allows such a recovery in favor of the personal representative of a deceased for the wrongful conduct of the defendant only when such deceased, had he lived, could have maintained such a suit. The question here is whether that means that he could have done so at the very time of his death, if he had not then have died. So that those questions call for consideration and interpretation of section 123, supra, in connection with our decisions heretofore rendered with respect to it.

██ The complaint in this case, as in the case of G. W. Craig (plaintiff's intestate) versus this appellant, seeks a recovery for personal injuries on account of the continuing negligence of defendant over a long period of years, ending October 1944, which also ended his service in the mine where it is alleged he contracted the disease on account of the negligent failure of defendant to exercise due care to make his place of work reasonably safe. The complaints in both suits show that they are based on the same cause of action. It is noted here again that a disease so contracted is not an occupational disease: that is, one which results from ordinary and known incidents of the employment, not due to the negligence of defendant. But where the disease came on gradually over a period of years, caused by the negligent failure of defendant to provide a reasonably safe place of work, it is the result of a tort for which an action at law will lie subject to the rules ordinarily applicable to such actions. City of Clanton v. Johnson, 245 Ala. 470, 17 So.2d 669; American Mut. Liability Ins. Co. v. Agricola Furnace Co., 236 Ala. 535, 183 So. 677; Gentry v. Swann Chemical Co., 234 Ala. 313, 174 So. 530.

As we observed, the suit in the case of G. W. Craig was filed February 14, 1946, more than a year from the last occasion of his exposure to the danger, and was disposed of in his lifetime. After it was transferred to the United States District Court a motion was made by defendant in that court for a summary judgment because it was barred by the one year statute of limitations. This motion was granted on hearing and an involuntary dismissal resulted, which finally disposed of that case and was an adjudication that the claim was on February 14, 1946 barred by limitations. Such proceeding pretermitted consideration of other defenses. That judgment remained in force until Craig died February 21, 1949. In the interim nothing in that connection appears to have occurred. The proof submitted on the motion to dismiss shows that the basis of the claim was that Craig had not exposed himself to the danger after October 3, 1944, more than one year prior to the institution of his suit. That judgment of dismissal seems not to have been reviewed. It does not seem to have been contended that Craig's condition did not appear until more than one year after he was last exposed to the dangerous situation. On the other hand, he terminated his employment at the time when he became so afflicted, because he could not carry on his work. Gulf States Steel Co. v. Jones, 204 Ala. 48, 85 So. 264. There is no legal difficulty apparent at that point.

Had Craig sued in his lifetime before the bar became complete and had died pending the suit, the statute of limitations of course was not a bar to his suit, and though his cause of action was over a year old, his personal representative could sue within two years after his death and not be barred. Parker v. Fies & Sons, 243 Ala. 348, 10 So.2d 13, overruling Ex parte Adams, 216 Ala. 241, 113 So. 235. Having filed suit after the bar was complete and judgment rendered dismissing it because it was barred, the question is whether the requirements of the statute were met so as to justify this suit.

In the case of South & N. A. R. Co. v. Sullivan, 59 Ala. 272, a suit was brought under the Homicide Act by the personal representative of a married woman who had been killed by the wrongful act of the defendant. The question was whether under the statute the suit could properly be

brought, in view of the fact that the married woman could not in her own name have sued for the injury and recovered if she had not died. This resulted from the fact that at that time in order to maintain such a suit it must have been prosecuted in the name of both the husband and wife.

The Court held that the suit could be maintained by the personal representative of the wife under the express language of the statute which gives the personal representative the right to sue, notwithstanding the terms of the statute which limits the right to sue to cases in which an action could be maintained by the decedent if living. It was declared that those words of the statute were intended to state the character of the act or omission which would support the action in the person by whom it could be maintained, since it had already been stated in the statute that the personal representative could bring the suit.

In the case of Suell v. Derricott, 161 Ala. 259, 49 So. 895, 23 L.R.A.,N.S., 996, a suit was brought by a personal representative under the Homicide Act. The Court referred to Lord Campbell's Act, which was the predecessor of our Homicide Act, and to that feature of it which provides the right of action is only given to the personal representative when the intestate could have maintained an action for the same act had it failed to produce death. It declared the result of that to be that all defenses available to the defendant, if the action had been brought by the person injured when death did not result, are available to the defendant in an action brought by the administrator of the injured person. The Court therefore held that contributory negligence on the part of the deceased person, who was so injured, was available as a defense under the Homicide Act.

In the case of Ex parte Adams, 216 Ala. 241, 113 So. 235, a person having been injured died from the effects of the injury, but before she died she brought suit for such injury. Pending that suit the plaintiff died and Adams was appointed administrator. A motion was made in the circuit court to revive the suit in the name of the administrator. This motion was overruled. Before said motion to revive was made the administrator filed suit under the Homicide Act. Thereupon the defendant filed a plea in abatement to the pendency of the latter suit by reason of the former suit then pending. The question was whether or not that plea was well filed. In passing upon it, the Court observed that the statute only gives a cause of action when the deceased could have maintained an action had she survived and that any defense is available if it had been available against an action by the deceased, had death not resulted, citing Suell v. Derricott, supra. The Court thereupon held that the pendency of the former suit was good matter in abatement of the second, since the plaintiff in the second suit stands in the shoes of the intestate.

In the case of Bruce v. Collier, 221 Ala. 22, 127 So. 553, an action was brought by Bruce against Collier for personal injuries in negligence and wanton counts. Pending the action, and some eight months after the injury, Bruce died. His death was suggested and leave to revive was granted in the name of his administratrix. Prior to the order of revival, the administratrix brought a separate suit under the Homicide Act for the same tort alleging that it had caused the death of Bruce. This latter suit, after revival, proceeded to trial and judgment was rendered in favor of the plaintiff, which judgment was paid.

When the first suit came on for hearing, the defendant filed a special plea setting up the rendition of the judgment under the Homicide Act and its satisfaction in abatement of the first suit. The question before the Court on the appeal was whether or not the judgment under the Homicide Act was a bar to the prosecution of the suit which had been begun by Bruce in his lifetime and which was revived after his death. The Court observed that the plea was in substance and effect one in bar rather than one in abatement. In discussing the question presented, the Court referred to the Adams case, supra, and noted it was there held that a suit under the Homicide Act lies when the injured party could have maintained an action if the injury had not caused death. That the Homicide Act creates a new cause of action punitive in

character for the benefit of the distributees of the estate. The Court held that the two actions could not be prosecuted and thereby departed from the Adams case, supra, although the Adams case was not at that time overruled. It was said that the two actions could not be maintained after the death of the injured person, although the beneficiaries in the two suits may be different, but not necessarily so; if the estate be solvent, the same beneficiaries would take in both actions. Nor would the character of damages be wholly different. In the personal injury suit punitive damages in cases of wantonness would be recoverable.

In the case of Breed v. Atlanta B. & C. R. Co., 241 Ala. 640, 4 So.2d 315, a life convict had been injured and died as a result thereof, and his personal representative brought a suit under the Homicide Act. The question was whether or not being a life convict thereby deprived him of all civil rights for his personal representative to maintain a suit under the statute. The Court was considerably divided on the question. The majority held that feature of the statute which provided that a suit could only be brought if the deceased could have maintained an action for such wrongful death, had it not caused his death, was not intended to define the qualities of the person who might be so injured and killed. The Court referred to the case of South & N. A. R. Co. v. Sullivan, supra, which stated that the provision referred to was intended to declare the character of the act or omission which would support an action and not to the person by whom it could be maintained. There were other cases cited which used that expression. All such cases which were cited were for the purpose of determining whether or not it served to declare the qualities of the person injured as a basis for the action. In the Sullivan case, supra, as we have said, a married woman was the person who was injured and killed.

In the case of King v. Henkie, 80 Ala. 505, which is cited in the Breed case, supra, the question was whether a defense of contributory negligence was available.

This writer first joined in Chief Justice Gardner's dissent from the majority opinion in the Breed case, but later withdrew that dissent and concurred in the majority; but in doing so it was not my purpose to approve all the inferences from the opinion of the majority. In Justice Gardner's dissent he asked the question whether the Court for one moment would say that one receiving an injury could not accept full settlement therefor and relieve the tortfeasor of all further liability, though death should subsequently ensue? The question is a pertinent one, and, as he points out, a great many states have noted that such an injured person could in his lifetime so release the tortfeasor. The question may also be asked whether or not if an injured person sues in his lifetime and recovers a judgment, especially if that judgment is paid, and then later he may have died from the injury, could his personal representative maintain another suit under the Homicide Act? As Justice Bouldin pointed out in the case of Bruce v. Collier, supra, the two suits would be for the same beneficiaries and in some instances they both would include punitive damages and, therefore, a different interpretation would justify two suits for the same injury and for the same damages for the benefit of the same parties, which he pertinently observed in that case was clearly not the legislative intent.

In the case of Parker v. Fies & Sons, 243 Ala. 348, 10 So.2d 13, a person was injured and filed suit for damages within the two year period of the statute. He then died pending that suit. It was revived in the name of his administratrix. She then amended the complaint by adding a count under the Homicide Act. The court on motion struck the amended count and the plaintiff took a nonsuit. The question was whether or not a count under the Homicide Act could be added to a suit brought by the injured person in his lifetime. Reiterating the principle declared in the case of Bruce v. Collier, supra, and expressly approving the statement that the lawmakers did not contemplate two actions by the administrator against the same defendant for the same tort, the Court held that it was not available to add such a count to such a suit. This was in direct conflict with the result of the holding in the case of Ex parte

Adams, supra, and, as we have said, that case was overruled in so far. as it made a different holding.

Our research does not disclose a case in Alabama where an injured person lived throughout the period of the statute of limitations, in which he could maintain a suit for personal injuries and failed to prosecute such suit. Our inquiry is whether his personal representative could do so when at his death resulting from such injury, he could not have maintained that suit by reason of the statute of limitations. If the personal representative could do so it would be in direct conflict with the clear, concise terms of the statute, if those terms of the statute referred to the right of the injured person to maintain a suit *at the time of his death.* It may be ambiguous to a certain extent as to whether or not it refers to the right of the injured person to sue existing at the time of the injury or at the time of his death. This statute was considered by the Second Circuit Court of Appeals of the United States in the case of Seaboard Air Line R. Co. v. Allen, 192 F. 430, and it was held that if the injured person was barred of his suit at the time of his death by reason of the statute of limitations, his personal representative could not maintain a suit under the Homicide Act by reason of the terms of the statute, to which we have referred.

The Allen case, supra, was called to the attention of Justice Bouldin in writing the opinion in Parker v. Fies & Sons, supra. It was not pertinent to the question he was deciding or involved in that case. However, he thought it was important to refer to the soundness of the Allen case, although it was not involved because the doctrine of that case found expression as the law of Alabama in various instances. He says it is in conflict with our own case of Gulf States Steel Co. v. Jones, 204 Ala. 48, 85 So. 264. An examination of that case will show that the statement by Justice Bouldin is inaccurate in so far as the question involved was concerned. In the Allen case the injured party died after the statute of limitations had barred his right to sue for the injury. In the Jones case, on the other hand, the statement of facts shows that Jones was injured on July 4, 1917, and that he died on April 10, 1918. It therefore affirmatively appears that at the time of his death his claim for personal injuries on account of the accident had not been barred by limitations. It was said in that case that count 2 of the complaint under the Homicide Act was not subject to the limitory effect asserted in the plea since two years is the period expressly allowed therein for commencing the action. The question was not raised or presented as to what the effect would have been had he died after the expiration of one year from the date of the injury. The question in the case that was presented to the court resulted from the fact that the action was commenced on August 2, 1918, which was more than one year after the injury occurred. The court observing that so far as the Homicide Act is concerned, it was a matter of two years after the death of the injured person. Those matters were not carefully observed by Justice Bouldin in saying that the Allen case conflicts with the Jones case. It would be so if the injured party had died more than one year after the date of his injury, but it appears here that was not the situation.

We think the opinion of the Court of Appeals of New York in the case of Kelliher, Adm'r v. New York Central & H. R. R. Co., 212 N.Y. 207, 105 N.E. 824, 825, L.R.A. 1915E, 1178, gave expression to sound views in construing a similar statute, and we quote from it as follows:

"We think the framers of the section considered that no action should be maintainable under it unless the decedent, at the time of his death, could have maintained an action. The section has been held to bar an action in favor of the representative where his decedent in his lifetime recovered a judgment for personal injuries, which was afterwards paid (Littlewood v. Mayor, etc., of [City of] New York [89 N.Y. 24, 42 Am.Rep. 271]) ; or where there has been a settlement between the injured person and the party charged with negligence (Dibble v. New York & Erie R. R. Co., 25 Barb. [N.Y.,] 183) ; or where the

defendant is released from liability by the agreement of the intestate (Hodge v. Rutland R. Co., 112 App.Div. 142, 97 N.Y.S. 1107, affd. 194 N.Y. 570, 88 N.E. 1121); or where the intestate was guilty of such contributory negligence as would have barred an action by him (Shearman & Redfield's Law of Negligence (6th Ed.) § 140a, and cases cited).

"In the case at bar the decedent allowed the three years to expire within which he was permitted to commence an action. His subsequent death could not revive the cause of action based upon his injuries in favor of his representative. By the express language of the statute the wrongdoer is liable to the representative only in a case where he would have been liable to the decedent had death not ensued. In construing the meaning of this language in the Littlewood Case, Judge Rapallo said:

" 'It seems to me very evident that the only defense of which the wrongdoer was intended to be deprived was that afforded him by the death of the party injured, and that it is, to say the least, assumed throughout the act that at the time of such death the defendant was liable.'—89 N.Y. 28, 42 Am.Rep. 271.

"In a case involving a similar statute the United States Supreme Court said:

" 'As the foundation of the right of action is the original wrongful injury to the decedent, it has been generally held that the new action is a right dependent upon the existence of a right in the decedent immediately before his death to have maintained an action for his wrongful injury.' Michigan Cent. R. R. Co. v. Vreeland [227 U.S. 59, 69, 70, 33 S.Ct. 192, 57 L.Ed. 417, 421, 422, Ann.Cas.1914C, 176].

"Again in McKay v. Syracuse Rapid Transit R. Co., supra, Judge Miller said:

" 'Her (the injured person's) cause of action abated upon her death, but the Legislature has substituted a new action and has specified the condition upon which it may be maintained, i. e., the right of the injured person to maintain an action if death had not ensued.' 208 N.Y. [359] 363, 101 N.E. [885] 886.

"The statute and those decisions establish the rule that, where an action could not have been brought by the decedent, it cannot be maintained for the same accident by his representative."

The same result was reached by the Supreme Court of Virginia in the case of Street v. Consumers Mining Corp., 185 Va. 561, 39 S.E.2d 271, 167 A.L.R. 886 interpreting a similar provision in its Homicide Act.

We are not willing to agree that the legislature intended to approve a situation where two suits could be prosecuted to judgment for the same injury, one by the injured person in his lifetime and the other by his personal representative after his death. We think that the legislature did not intend to create a cause of action occurring at the death of the injured party, if at that time the injured party was unable to maintain a suit for personal injuries based on that occurrence by reason of the fact that either he had already sued and recovered a judgment on account of it or he had accepted full satisfaction and release of the claim, or if his contributory negligence proximately caused his injury, or if he permitted the claim to be barred by the statute of limitations.

There is nothing in the case of Smith v. Lilley, 252 Ala. 425, 41 So.2d 175, which reflects upon this conclusion.

The result of the foregoing discussion leads to the conclusion that in this case while the injured party did file a suit before his death for the injuries sustained by him, which caused his death it was determined in that case that his claim was barred by the statute of limitations. Whether or not the effect of that determination is conclusive of that question, and treated as if no suit had been brought by him in his lifetime, the pleadings in this case show that more than a year had elapsed at the time of his death from the occurrence of any act on the part of defendant which could have given rise to his injury and death.

We think, therefore, the demurrer to pleas 9, 10 and 11 should have been overruled.

On rehearing the original opinion is withdrawn and the foregoing is substituted in lieu thereof.

Reversed and remanded.

LIVINGSTON, C. J., and BROWN, LAWSON, SIMPSON and STAKELY, JJ., concur.